

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-12-00012-CR

Reynaldo **GARCIA**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 379th Judicial District Court, Bexar County, Texas
Trial Court No. 2010-CR-7744
Honorable Ron Rangel, Judge Presiding

Opinion by:  Rebeca C. Martinez, Justice

Sitting:  Catherine Stone, Chief Justice
Sandee Bryan Marion, Justice
Rebeca C. Martinez, Justice

Delivered and Filed:  March 20, 2013

AFFIRMED

Reynaldo Garcia appeals his convictions for aggravated sexual assault of a child, alleging his attorney rendered ineffective assistance.  We affirm the trial court's judgment.

### BACKGROUND

Garcia was indicted in a fifteen-count indictment charging the offenses of aggravated sexual assault of a child.  The complainant was Garcia's stepdaughter, A.H.  Garcia pled not guilty and proceeded to a jury trial.  A.H. testified that Garcia assaulted her multiple times both anally and vaginally beginning in June 2008 when she was ten years old.  After the assaults were

reported to the police in July 2009, A.H. underwent a sexual assault exam, which revealed that she was infected with vaginal chlamydia. No evidence was admitted at trial showing that Garcia was or had been infected with chlamydia.

At the close of the evidence, the State abandoned six counts. The jury found Garcia guilty of the remaining nine counts and Garcia was sentenced to ninety-nine years on each count, to be served concurrently. Thereafter, Garcia retained new counsel who filed a motion for new trial alleging newly discovered evidence and actual innocence. Counsel later filed an untimely amended motion for new trial alleging ineffective assistance of trial counsel in addition to the two previous grounds. Three days into the hearing on the motion for new trial, the State objected to testimony regarding ineffective assistance of counsel, arguing that the defense was limited to the grounds raised in its original motion for new trial. The trial court permitted the testimony, but ultimately refused to consider the untimely amended motion for new trial. The trial court denied the motion for new trial. On appeal, Garcia now complains that he received ineffective assistance of counsel at trial.

### EVIDENCE AT TRIAL

A.H., who was thirteen years old at the time of trial, testified that Garcia married her mother, Stephanie Garcia, when she was three or four years old. She rarely saw her biological father, who lived out of state. In June 2008, when A.H. was ten, she got into an argument with her mother and "ran away" to the corner store across the street. She called her "Grandma Bea" from a pay phone. Bea called Stephanie, who told Garcia to pick up A.H. from the store and spank her. A.H. and Garcia were alone when they returned to their mobile home. Garcia asked A.H. if she wanted the spanking or something that would not hurt as much, but it "would still be punishment." A.H. chose the less painful option, and Garcia told her to go to her room and pull down her pants and underwear like she normally did when he spanked her. A.H. bent over on

her bed and buried her head in her arms and felt Garcia stick something inside her anus. It hurt and lasted a few minutes. Afterward, Garcia took her underwear and wiped something off with his shirt; he also wiped around her butt. Later on, he came in and sternly told her that if she told anybody what happened, "there would be consequences."

Garcia assaulted A.H. a second time about a week later. A.H. was lying in bed facing her window and wearing shorts. Stephanie was asleep in her bedroom on the other side of the mobile home. Garcia came in and tugged at her shorts but did not take them down. Again, A.H. felt something go into her butt. It lasted a few minutes and then Garcia left and went to his bedroom. On another occasion, A.H. was in her bed facing the door. Garcia came in and tried to pull her shorts down in the front. This time something went into her "vagina instead of my butt and it was the same thing that went in my butt the other two times or more." A.H. eventually figured out what Garcia was putting in her vagina and anus because one time she saw both of his hands and figured he was not putting his hands inside her. A.H. was very scared during these encounters and pretended to be asleep.

After the first or second incident, A.H. and her mother began arguing after A.H. refused to rub Garcia's feet or back. A.H. tried to tell her mother about what Garcia had done to her, but Stephanie cut her off and told her not to say anything, and that she was a liar. A.H. stated that Garcia came into the bedroom where she was talking to Stephanie and said, "I haven't been doing anything, who are you going to believe, . . . this liar or me?" Stephanie did not say anything. That was the last time A.H. tried to talk to her mother about the abuse because A.H. assumed her mother would not believe her. A.H. testified that Garcia was usually the one to discipline her, but that her mother sometimes made her kneel on rice, grabbed her hair, punched her, or kicked her.

A.H. testified that Garcia assaulted her between ten and twenty times. On re-cross, A.H. testified that she did not have sexual contact with anyone else between the ages of ten and eleven, and in fact, had never had sexual contact with any other person at any time besides Garcia.

Several witnesses testified that A.H. told them about Garcia assaulting her. A.H.'s cousin, Lauren Peterson, testified that in the spring of 2009, A.H. told her something that alarmed her. Lauren then told her mother, Elizabeth Galvan, who reported the abuse to A.H.'s maternal grandmother, Bea, with whom A.H. was living at the time. Bea did not act on the information given to her. On cross-examination, Lauren stated that A.H. had told "kids' lies" in the past, meaning that she lied about her grades or other inconsequential matters. Lauren emphasized that she believed A.H. regarding the allegations against Garcia because, "I don't think any child would lie about anything like that, nor put it in such detail as she did."

In the summer of 2009, A.H. took a vacation to Corpus Christi with her biological father's family. A.H.'s half-sisters, Tiara and Tircah Vidaurri-Hammonds, who lived in Colorado, testified that A.H. told them her "biggest secret" and that she was scared to return home with Stephanie and Garcia. A few days later, A.H. told her paternal grandmother, Anita Crawford, that Garcia assaulted her. The half-sisters had only known A.H. to fib about small matters, such as her grades.

Anita Crawford testified that Tircah prompted A.H. to tell Anita what she had told Tircah and Tiara. The next day, Anita took A.H. to the police station so she could give a statement. Since that time, A.H. has lived with Anita and her husband.

Daniel Gibbons is A.H.'s maternal grandfather and was married to Bea. A.H. and her parents lived with Bea and Daniel for a few months in 2008. Daniel observed that Stephanie was very cold towards her daughter, and there were times when they had heated arguments.

Stephanie used the "F" word often—"pretty much every other word" when speaking to A.H. Daniel believed that Stephanie's and Garcia's disciplining of A.H. went too far and was abusive. Daniel also stated he was generally opposed to spanking as a form of discipline.

Cynthia Garcia, a sexual assault nurse examiner (SANE) at ChildSafe, testified that she examined A.H. on July 9, 2009. A.H.'s statement to Nurse Garcia was consistent with her testimony at trial in that she stated Garcia first assaulted her on the day she ran away from home, and that the assaults continued periodically until the family moved to Bea's house.

In her physical examination of A.H., Nurse Garcia did not observe any recent or healed trauma. She further stated that children rarely have physical trauma, and that because of the large amount of blood flow to the genitals and anus, those areas heal very quickly. Nurse Garcia tested A.H. for chlamydia, gonorrhea of the vagina and the anus, and also trichomonas of the vagina. A.H. tested positive for vaginal chlamydia. Nurse Garcia stated that chlamydia is only transmitted sexually. She also stated that chlamydia can be asymptomatic and can resolve without treatment. Similarly, a person with asymptomatic chlamydia could be taking an antibiotic for another condition which would also treat the chlamydia. A.H. denied being sexually active with anyone other than Garcia. Based on A.H.'s oral history and the positive chlamydia result, Nurse Garcia opined that A.H. had been sexually abused.

San Antonio Police Department Detective Pete Sweeney testified that A.H. was interviewed by police two times. Detective Robert Valadez first interviewed A.H. when she went to the police station with Anita. Detective Sweeney then conducted a second interview. Sweeney found that the two interviews were consistent. Sweeney also reviewed the SANE report as well as Child Protective Services records and found them to be consistent with A.H.'s allegations against Garcia. Sweeney testified that in an investigation, consistency is important because it gives the investigator an indication that the complainant is being honest and truthful.

Sweeney also interviewed Anita, Lauren, Elizabeth, and Bea; he also obtained recorded statements taken from Tircah and Tiara by the Colorado authorities. All were consistent with A.H.'s statement.

Detective Sweeney testified that he had to subpoena Stephanie to take her statement. Stephanie was accompanied by her attorney and Garcia. According to Sweeney, Stephanie made two statements that were inconsistent with what she had previously told him on the telephone. She denied that Garcia made A.H. take her pants and underwear off to receive spankings, and also denied that Garcia was allowed to sleep in the same bed as A.H. Sweeney got the impression that Stephanie was trying to protect her husband.

Sweeney also interviewed Garcia. He was unable to obtain Garcia's medical records from the Health Department. Although Garcia agreed to submit to a DNA test, Sweeney did not have him tested because he felt that it was too remote in time given that A.H. alleged that Garcia last assaulted her in January 2009 and Garcia was interviewed on July 23, 2009. Therefore, Sweeney was not able to confirm whether Garcia also had a sexually transmitted disease.

Stephanie testified that Garcia did the majority of the disciplining of A.H. Stephanie testified that A.H. lied regarding her physical abuse of A.H. because she did not like that her mother was a strict parent. She further testified that she believed A.H. was lying about the accusations against Garcia because "it doesn't add up and because she had an STD . . . and I didn't have an STD." Stephanie stated that she was under the care of her obstetrician in 2009 and never tested positive for an STD.[1] Stephanie further stated that Garcia slept in the master bedroom with her and that she would have known if he left the bed to assault A.H. because her

---

[1] Stephanie testified that she suffered a miscarriage in July 2009 and became pregnant again in 2010; both babies were Garcia's.

infant slept with her and she slept lightly; also, Stephanie is diabetic and gets up often to drink or urinate.

Stephanie stated that A.H. got into trouble at the end of the school year in 2008 for writing on the bathroom wall with a marker. Stephanie and A.H. argued about whether A.H. wrote on the school wall. Upset, Stephanie left with the baby to go to Wal-Mart, then got a call from Bea informing her that A.H. ran away. When Stephanie returned home, Garcia had just returned from picking A.H. up from the corner store. A.H. did not appear traumatized to Stephanie.

Garcia testified in his own defense. He stated that A.H. lied numerous times. "You know, it could be small, it could be, you know, what I would think is somewhat of a decent lie, you know, nothing major, but, you know, to where it required some type of discipline." Regarding the "runaway" incident, Garcia stated that in June 2008, A.H. was in trouble for writing on the bathroom wall at school. She and Stephanie argued, and Stephanie told her she was going to have to live with her biological father. Stephanie became very upset and left to go to Wal-Mart. A.H. then ran away to the corner store, and called Bea, who called Stephanie. Bea also called Garcia. Garcia picked A.H. up, and when they returned home, Stephanie was there. Garcia never spanked A.H. that day. Garcia believed that A.H. lied about the accusations because she did not want to live with Garcia and Stephanie anymore, and she preferred to live with her grandmother Bea, who was not a strict disciplinarian. Garcia offered to submit to a DNA test, but the police never set the test up. Garcia testified that his lawyer had him tested for chlamydia in 2011 and he tested negative. Garcia denied assaulting A.H. at any time. Garcia admitted that he had a previous conviction for arson. He admitted that he burned his brother's car so that his brother could file a fraudulent insurance claim and get a new car. In addition, he was arrested for driving with a suspended license.

The jury convicted Garcia on nine counts of aggravated sexual assault.

## MOTION FOR NEW TRIAL

On January 11, 2012, Garcia's newly retained counsel filed a motion for new trial alleging the discovery of new evidence and actual innocence. The motion alleged that Garcia could not have infected A.H. with chlamydia because: he tested negative for chlamydia on May 20, 2011; he had not taken antibiotics since he was a child and chlamydia can only be treated with antibiotics; and his wife Stephanie tested negative for chlamydia on June 22, 2009 and again on March 22, 2010 when she was pregnant with Garcia's child.

On February 8, 2012, Garcia filed an amended motion for new trial alleging ineffective assistance of counsel as an additional ground to support his motion for new trial. A hearing commenced on the motion for new trial on February 17, 2012; the hearing continued on February 21, 2012 and concluded on February 24, 2012. On February 24, 2012, after the trial court heard testimony from trial counsel regarding the alleged ineffective assistance, the State objected to proceeding on the amended motion for new trial on the grounds that it was filed outside the 30-day period allowed by Rule 21.4.(b). *See* TEX. R. APP. P. 21.4(b) (providing that defendant may file amended motion for new trial without leave of court within 30 days after the date when the trial court imposes or suspends sentence in open court but before the court overrules any preceding motion for new trial). The defense objected that the State's objection was untimely because the court had already heard evidence relating to the claim of ineffective assistance. The trial court took the issue under advisement and continued to hear evidence.

Ultimately, the trial court denied the motion for new trial. In its findings of fact and conclusions of law, the trial court found that Garcia failed to establish (1) that the evidence he presented in his motion for new trial was "new evidence" that was unknown or unavailable at the time of trial, and (2) that the failure to discover information concerning the chlamydia antibody

test was not due to a lack of diligence on trial counsel's part. The trial court further found that because Garcia's amended motion alleging ineffective assistance was filed more than 30 days after sentence was imposed, the grounds asserted and evidence presented to support the amended motion could not be considered by the trial court in deciding whether Garcia was entitled to a new trial. *See* TEX. R. APP. P. 21.4(b), 21.8(a); *State v. Moore*, 225 S.W.3d 556, 569–70 (Tex. Crim. App. 2007) (trial court may act on untimely amendment to motion for new trial so long as it acts within 75-day period after the imposition or suspension of sentence in open court and State does not object to tardy amendment).

## DISCUSSION

The sole issue on appeal, as framed by Garcia, is whether trial counsel rendered ineffective assistance under the Sixth and Fourteenth Amendments to the United States Constitution when his deficient performance prejudiced Garcia. Garcia agrees that the amended motion for new trial raising ineffective assistance was untimely and states that he is raising the issue of ineffective assistance for the first time on direct appeal. He also concedes that the grounds alleged in his original motion for new trial—newly discovered evidence and actual innocence—were properly denied, and he does not challenge that ruling on appeal.

### *Standard of Review and Applicable Law*

To establish ineffective assistance, Garcia has the burden to prove that his trial counsel's performance was deficient and that it prejudiced his defense in that there is a reasonable probability that, absent counsel's errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687, 694 (1984); *Perez v. State*, 310 S.W.3d 890, 892–93 (Tex. Crim. App. 2010). Garcia must provide a sufficient record that affirmatively demonstrates ineffective assistance by a preponderance of the evidence, and overcomes the strong presumption that counsel's conduct fell within the wide range of reasonable professional

assistance. *Salinas v. State*, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005); *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). To establish deficient performance, Garcia must show that counsel's performance fell below an objective standard of reasonableness and must rebut the presumption that counsel's decisions were based on sound trial strategy. *Thompson*, 9 S.W.3d at 812–13. In evaluating counsel's performance, we do not focus on isolated acts or omissions, but review the totality of counsel's representation. *Id.* at 813. Failure to prove either prong of the *Strickland* test will defeat an ineffective assistance claim. *Id.*; *Perez*, 310 S.W.3d at 893. The standard for reviewing counsel's performance has never been interpreted to mean a defendant is entitled to "errorless or perfect counsel." *Badillo v. State*, 255 S.W.3d 125, 129 (Tex. App.—San Antonio 2008, no pet.) (quoting *Ex parte Welborn*, 785 S.W.2d 391, 393 (Tex. Crim. App. 1990)).

We must first resolve the question of whether to consider the testimony regarding ineffective assistance presented at the hearing on Garcia's motion for new trial. The State argues that, because it objected to the amended motion for new trial within the 75-day period after imposition of sentence, the trial court properly declined to entertain the amended motion and we are confined to reviewing just the trial record, not any testimony or evidence from the hearing on the motion for new trial. Garcia contends that we may consider both the trial record and the full motion for new trial record because trial counsel's testimony was necessary to the two grounds raised in the original motion for new trial and revealed deficient performance prejudicial to Garcia. We agree that in this case we may review both the trial record and the hearing on the motion for new trial for two reasons. First, the State waived its objection to the amended motion by not objecting until the third day of the hearing, after the trial court had already heard evidence regarding ineffective assistance. Generally, an objection made after the objectionable testimony has been received is untimely and any potential error is waived. *Mulder v. State*, 707 S.W.2d

908, 913 (Tex. Crim. App. 1986); *Amunson v. State*, 928 S.W.2d 601, 607 (Tex. App.—San Antonio 1996, pet. ref'd); *Villarreal v. State*, 821 S.W.2d 682, 686 (Tex. App.—San Antonio 1991, no pet.). Further, although *Moore* holds that the trial court may not rule on an untimely amended motion for new trial that was objected to within 75 days after sentence was imposed, it did not address a situation where the State objected to the late-filed amended motion *after* testimony regarding the late-filed amended motion had been presented. *See Moore*, 225 S.W.3d at 569–70. Thus, we find *Moore* to be factually distinguishable. Second, the trial court's findings of fact and conclusions of law indicate that the issues regarding newly discovered evidence and ineffective assistance were closely intertwined. Although the trial court's findings state that it did not consider the late-filed amended motion alleging ineffective assistance, the court goes on to reference trial counsel's testimony stating his reasons for not pursuing the chlamydia antibody test at trial.[2] It is therefore difficult to decipher which testimony pertains only to the newly discovered evidence issue and which pertains only to the ineffective assistance issue. Accordingly, our review of the record will encompass both the evidence at trial as well as the hearing on the motion for new trial.

*Analysis*

Garcia complains of numerous acts and omissions by trial counsel that he alleges constitute deficient performance. We review his complaints in four main categories.

### 1. *Expert Testimony Regarding "Truthfulness" of Complainant*

Garcia first contends that trial counsel failed to object to Detective Sweeney's expert opinion regarding the complainant's credibility. Rule 702 provides that if a witness possesses scientific, technical, or other specialized knowledge that will assist the trier of fact, and if the

---

[2] The trial court's findings include that, "Counsel also testified that part of his trial strategy was to cross[-]examine the complainant about previous sexual partners and to try and establish that she was not telling the truth."

witness is qualified as an expert by knowledge, skill, experience, training, or education, then that expert may testify with an opinion.[3] TEX. R. EVID. 702. Rule 702 does not, however, allow an expert to give an opinion that a complainant is truthful. *Yount v. State*, 872 S.W.2d 706, 711 (Tex. Crim. App. 1993).

At trial, Detective Sweeney often referenced the consistency of A.H.'s statements to police as well as the consistency of her statement as compared to the other witnesses who provided statements. This testimony, however, was given in the context of Detective Sweeney explaining how his investigation progressed and how he reached his decision to pursue charges against Garcia. *See, e.g., Dinkins v. State*, 894 S.W.2d 330, 347 (Tex. Crim. App. 1995) (police officers may testify to explain how investigation began and how defendant became a suspect); *Lee v. State*, 29 S.W.3d 570, 577–78 (Tex. App.—Dallas 2000, no pet.) (officer's testimony as to how the investigation began and how the defendant became a suspect is not hearsay). Further, Detective Sweeney did not offer an express opinion as to whether A.H. was telling the truth or whether Garcia committed the alleged sexual assaults. *See Cohn v. State*, 849 S.W.2d 817, 818 (Tex. Crim. App. 1993). Trial counsel may therefore have determined that Detective Sweeney's comments regarding the "consistency" of A.H.'s statements did not constitute an opinion that A.H. was a truthful person, and thus were not objectionable. *See Lopez v. State*, 343 S.W.3d 137, 140–41 (Tex. Crim. App. 2011). Even assuming that Detective Sweeney's testimony was an unqualified direct opinion that A.H. was being truthful, defense counsel may have made a tactical decision not to object to avoid drawing undue attention to it or because counsel may have believed it was already clear to the jury that Detective Sweeney believed A.H.'s story because he was the detective who pursued the charges against Garcia. *See id.* at 141.

---

[3] We assume, without deciding, that Detective Sweeney was qualified as an expert. *See Johnson v. State*, 970 S.W.2d 716, 720 (Tex. App.—Beaumont 1998, no pet.) ("The qualifications of the CPS case worker to render an expert opinion was [sic] not subject to a trial objection; therefore[,] we will assume she was qualified.").

Given our conclusion that Detective Sweeny did not render an inadmissible opinion regarding A.H.'s credibility, and that, even if he did, a reasonable strategy exists for counsel's conduct, Garcia has not met his burden of proving that counsel's conduct was deficient under the first *Strickland* prong. *See Strickland*, 466 U.S. at 689.

### 2. *Trial Counsel "Opened the Door" to the Details of Inadmissible Prior Convictions*

Garcia was indicted as a repeat offender based upon his conviction for arson in 1999. At trial, counsel conceded that the conviction was proper impeachment evidence because "it is a felony and it is within the ten years, so if I do put him on the stand, they can bring that up." On direct examination, counsel questioned Garcia regarding the arson conviction. Counsel also inquired about Garcia's conviction for driving while license suspended. Garcia contends that he was harmed when on cross-examination the State delved into the underlying facts of the prior convictions and painted the arson offense as "a complex fraud upon an unnamed insurance company" perpetrated by Garcia and his brother. Garcia now argues the arson conviction was "prima facie inadmissible" under Rule 609. *See* TEX. R. EVID. 609.

Rule 609 is titled "Impeachment by Evidence of Conviction of Crime" and provides, in part, that:

> (b) Time Limit. Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the later date, unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect.

TEX. R. EVID. 609. Garcia was placed on deferred adjudication for the arson offense in 1997 and convicted of the offense on April 26, 1999 when his deferred adjudication was revoked. According to Garcia, he was sentenced to five years of imprisonment and released on parole on

March 19, 2001.  He successfully completed his parole term.  The trial in the present case began on December 5, 2011.

Garcia contends that because parole does not constitute confinement, the relevant ten-year time period should be calculated from March 19, 2001.  *See U.S. v. Daniel*, 957 F.2d 162, 168 n.4 (5th Cir. 1992) (citing authority suggesting that "confinement" under Rule 609 does not include probation or parole); *Yanez v. State*, 199 S.W.3d 293, 305 (Tex. App.—Corpus Christi 2006, pet. ref'd) (ten-year limitation runs from date of the conviction or from the release from confinement); *but see Walter v. State*, 209 S.W.3d 722, 732 n.6 (Tex. App.—Texarkana 2006), *rev'd on other grounds*, 267 S.W.3d 883 (Tex. Crim. App. 2008) (citing TEX. GOV'T CODE § 508.001(6) as "suggesting that parole is not a release from confinement for purposes of Rule 609 of the Texas Rules of Evidence").  In sum, Garcia argues that the arson conviction was inadmissible because it was too remote in time under Rule 609 and the trial court would have likely found that the probative value of the prior conviction did not substantially outweigh its prejudicial effect.  *See Theus v. State*, 845 S.W.2d 874, 880 (Tex. Crim. App. 1992) (listing five factors for courts to consider in determining under Rule 609 whether a prior conviction's probative value outweighs its prejudicial effect).

Assuming, without deciding, that Garcia was released from confinement when paroled, the record before us does not demonstrate the date on which Garcia was paroled.  There is no evidence in the record to support the March 19, 2001 date he provides in his appellate brief.  At the hearing on the motion for new trial, counsel was not questioned regarding this subject.  At trial, Garcia provided the following testimony regarding the arson conviction:

> A: In 1997 I was — I picked up an arson case to a vehicle, and I was sentenced to five years deferred adjudication probation.  I was on probation for a while.  I would say a year or maybe two, something — roughly.  It's hard to remember back in '97.  I was on probation for a while.  I stopped reporting, and I ended up going to court and the judge sentenced me to five years TDC.

Q: And how much time did you do at TDC?

A: I would say a little over two years of the five-year sentence because, I say, basically good time, good behavior, stuff like that.

Given the lack of any evidence indicating when Garcia actually began serving his parole term, he cannot demonstrate that the prior arson conviction was prima facie inadmissible.

Garcia further argues that trial counsel was deficient for bringing up the prior convictions on direct examination instead of waiting for the State to impeach Garcia with the convictions on cross-examination. He contends that under Rule 609, the State would have been limited to routine impeachment revealing the existence of the priors and would have been unable to introduce the underlying facts and details of the prior convictions. *See* TEX. R. EVID. 609; *Jabari v. State*, 273 S.W.3d 745, 753 (Tex. App.—Houston [1st Dist.] 2008, no pet.) (details of prior conviction are generally inadmissible for impeachment purposes). Although it is arguable that another lawyer might have employed a different tactic, we are not persuaded that counsel's performance in this regard was deficient. At the hearing on the motion for new trial, counsel was not questioned regarding his decision to question Garcia about the priors on direct examination. Absent an explanation in the record regarding counsel's reasons for inquiring about the prior convictions on direct examination, we will presume that counsel exercised reasonable professional judgment. *See Ortiz v. State*, 93 S.W.3d 79, 88–89 (Tex. Crim. App. 2002) (where there is a possibility that conduct arose from legitimate trial strategy, reviewing court may not find counsel ineffective on direct appeal). It may be that counsel decided to inquire about the arson and driving while license suspended convictions because he wanted Garcia to appear open and honest and to inform the jury that when Garcia had committed bad acts in the past, he admitted his guilt; in contrast, Garcia did not admit guilt at trial because he claimed he did not assault A.H. *See, e.g., Huerta v. State*, 359 S.W.3d 887, 891–92 (Tex. App.—Houston [14th

Dist.] 2012, no pet.) (it is sound trial strategy for defense counsel to elicit testimony from the accused as to his prior conviction "because doing so removes the sting from an attack that would otherwise come from the State"). On this record, Garcia has failed to rebut the strong presumption of reasonable assistance. We cannot say that "no reasonable trial strategy could justify" counsel's decision to question Garcia about his prior convictions on direct examination. *See Lopez*, 343 S.W.3d at 143. Therefore, Garcia has failed to show that this conduct constituted deficient performance.

3. ***Trial Counsel Was Unaware of the Substantive and Procedural Aspects of Texas Rule of Evidence 412***[4]

At the end of the defense's cross-examination of A.H., trial counsel asked, "Are you sexually active at all now?" The State objected, stating "this is covered by the rape shield laws . . . ." The trial court sustained the objection and questioning resumed. At the end of the proceeding, the trial court informed defense counsel that he could ask the complainant whether she was sexually active at the time the assaults were alleged to have occurred. The next day, trial counsel asked A.H. whether she had sex with boys or girls when she was between the ages of 10 and 11. A.H. answered, "No." Counsel continued to ask A.H. whether she had sent text messages concerning sex or talked to her friends about sex, both of which she denied.

On appeal, Garcia argues that this "episode demonstrates counsel's unfamiliarity with the substantive and procedural law necessary to defend an individual in . . . [an aggravated sexual assault of a child] case" and complains that "more skillful" cross-examination would have yielded different answers from the complainant. Garcia, however, has not shown that counsel

---

[4] Rule 412, commonly known as the Texas rape shield law, was designed "to restrict the introduction of evidence regarding the complainant's prior *consensual* sexual behavior to situations in which the evidence is both relevant to a defendant's defense and not unduly prejudicial or inflammatory." *Draheim v. State*, 916 S.W.2d 593, 599 (Tex. App.—San Antonio 1996, pet. ref'd).

performed deficiently when questioning A.H. regarding her sexual history. That Garcia's appellate attorney would have pursued a different line of questioning or conducted more extensive questioning does not suffice to overcome the strong presumption that counsel rendered reasonable professional assistance and, thus, does not support a finding that counsel was deficient. *See Ex parte Ellis*, 233 S.W.3d 324, 331 (Tex. Crim. App. 2007); *Ewing v. State*, 549 S.W.2d 392, 395 (Tex. Crim. App. 1977), *overruled on other grounds by Hurley v. State*, 606 S.W.2d 887 (Tex. Crim. App. [Panel Op.] 1980) ("The fact that another attorney may have pursued a different tactical course of trial is insufficient to support a finding of ineffective assistance of counsel.").

### 4. *Trial Counsel's Inadequate Investigation Prevented His Subpoenaing Stephanie Garcia's Medical Records to Prove the Absence of Chlamydia in Appellant; Trial Counsel Failed to Test Appellant for Chlamydia Antibodies*

Finally, Garcia argues counsel's failure to introduce medical records for Garcia and Stephanie related to the chlamydia issue constituted deficient performance. He contends that the positive chlamydia test showed that A.H. was sexually active, and given her uncontradicted testimony that she had never had sexual relations with anyone but Garcia, the jury was left to infer that she contracted the chlamydia infection from Garcia. At the motion for new trial hearing, Stephanie's obstetrical records were introduced to show that she tested negative for chlamydia in 2005, July 2009, and again in 2010. Additionally, a chlamydia antibody test for Garcia was introduced to show that Garcia was never infected with chlamydia at any time. Garcia concedes that this evidence is not "newly discovered" and that trial counsel did not exercise due diligence to obtain it. Nevertheless, Garcia argues counsel was ineffective in failing to consult with a medical expert witness and to seek testing of Garcia for chlamydia antibodies before trial.

We disagree that Garcia has established deficient performance on this basis. At the hearing on the motion for new trial, counsel testified that at the time of trial he was not aware of the existence of a chlamydia antibody test that would prove his client never had chlamydia. Additionally, the State's medical expert, Dr. Nancy Kellogg, a "child abuse pediatrician," cast doubt on the reliability of the chlamydia antibody test, stating that it is not relied upon by the medical and scientific communities and that she did not know of any hospital or doctor in the United States who used the test. She further stated that there is no test that can conclusively determine that someone has never been infected with chlamydia. In denying the motion for new trial, the trial court made the following finding regarding the antibody test: "The Court is also not persuaded, even if the chlamydia antibody evidence was newly discovered, that it was probably true or that it would have resulted in a different result at trial. The Court is not persuaded that the test is reliable." Thus, we conclude counsel cannot be faulted for failing to obtain and introduce the chlamydia antibody test given its questionable reliability and non-uniform use in the medical community.

As to Stephanie's medical records, the motion for new trial record demonstrates that counsel decided not to introduce them for a particular reason. Counsel testified that he chose not to introduce Stephanie's medical records, which showed that she miscarried in the summer of 2009, because he feared that the jury would conclude that chlamydia caused the miscarriage. Trial counsel further testified that he did not believe chlamydia was a crucial issue at trial. Rather, he believed that A.H. was lying about not having other sexual partners, and further believed that someone else gave her chlamydia.[5] Thus, counsel did not focus on introducing evidence that his client never had chlamydia because it would not have proved that Garcia did

---

[5] As the State points out in its brief, A.H. may have contracted chlamydia from another person during the period of time when the sexual assaults stopped in 2008 and when she was tested for the disease in July 2009.

not assault A.H. Counsel stated that it was reasonable trial strategy to focus on the fact that Garcia did not assault A.H. and that A.H. was lying about her sexual history. Counsel stated he did not believe that he could prove that Garcia never had chlamydia. Further, he was afraid that if he did present evidence that Garcia and Stephanie did not have chlamydia, the State would "shoot holes in his theory." Counsel also explained that he cross-examined the SANE nurse and got her to admit that the presence of chlamydia in A.H. did not establish that Garcia committed the alleged assaults. He also mentioned that the State could not prove that Garcia ever had chlamydia and was unable to produce medical records showing that he tested positive for chlamydia, even though such information, if it existed, should have been forwarded to the Health Department. Given counsel's pursuit of a legitimate defensive strategy at trial, we cannot conclude that his performance was deficient. *See Goodspeed v. State*, 187 S.W.3d 390, 392–93 (Tex. Crim. App. 2005).

## CONCLUSION

In conclusion, we cannot say that Garcia has met his burden of proving there was no legitimate strategy for counsel's conduct at trial. Therefore, we conclude that Garcia has failed to rebut the strong presumption of effective assistance and has not shown that counsel's performance fell below an objective standard of reasonableness under the prevailing professional norms. *See Garcia*, 57 S.W.3d at 440; *Lopez*, 343 S.W.3d at 142. Accordingly, Garcia has failed to meet his burden under the first *Strickland* prong. *See Strickland*, 466 U.S. at 689, 697 (appellant's failure to satisfy one prong of the *Strickland* test negates a court's need to consider the other prong). We therefore overrule Garcia's complaint of ineffective assistance and affirm the judgment of the trial court.

Rebeca C. Martinez, Justice

Do not publish